**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 12-23534-CIV-SEITZ

ELSA MARTINEZ, et al.,

Plaintiffs,

vs.

MIAMI-DADE COUNTY, et al.,

Defendants.
_________________________________/

**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Miami-Dade County's Motion for Final Summary Judgment [DE-109] and Defendants Blue Martini Kendall, LLC and Blue Martini Kendall, Inc.'s Motion for Summary Judgment [DE-106]. This action arises from an incident outside the Blue Martini's bar/restaurant/night club in Miami, when off-duty police officers working security for Blue Martini allegedly battered and arrested Plaintiffs. Plaintiffs filed a fifteen count complaint against Miami-Dade County, the individual officers involved in the incident, the Director of the Miami-Dade Police Department, Blue Martini Kendall, LLC and Blue Martini Kendal, Inc. Plaintiffs' claims against Miami-Dade County, the individual officers, and the Director have settled.

Four of Plaintiffs' claims remain: (1) each Plaintiff's claim against the Blue Martini Defendants for vicarious liability and (2) and each Plaintiff's claim for negligence against the Blue Martini Defendants. The Blue Martini Defendants seek summary judgment on these four claims. Additionally, the Blue Martini Defendants and Miami-Dade County (Miami-Dade or the County) have cross-moved for summary judgment on Miami-Dade's claims for indemnification

and contribution from the Blue Martini Defendants.[1] Because no genuine issue of material fact exists as to Plaintiffs' claims against Blue Martini, Blue Martini is entitled to summary judgment on Plaintiffs' claims against it. Because Miami-Dade has established that Blue Martini owed it a statutory duty of indemnity, Miami-Dade County is entitled to summary judgment on its claim for indemnity.

## I. Undisputed Material Facts

*The Miami-Dade Police Department's Off-Duty Program*

The Miami-Dade Police Department (MDPD) operates a program to contract out off-duty police officers to provide police services to private entities seeking police services at public and private events. (DE-109-4, ¶4.) When an off-duty police officer works in this program he or she has the same discretion and police authority as when he or she responds to calls for service while on-duty. (Lewis Dep.[2] 60:7-11.) Any arrest made by an off-duty officer is made on behalf of the MDPD, not the private establishment. (Lewis Dep. 60:12-19.)

A private employer seeking to partake in the program gives directions to MDPD, through the permit application, about where the off-duty officers are supposed to work and MDPD relays that information to the individual officers. (Sanchez Dep.[3] 28:3-20.) The MDPD does not allow off-duty officers to work inside or at the door of establishments that serve alcohol. (Marquez

---

[1]The Blue Martini Defendants will be referred to jointly as Blue Martini and separately by their full names.

[2]Lewis Dep. refers to the deposition of Janet Lewis filed at DE-108-7.

[3]Sanchez Dep. refers to the deposition of Herberto Sanchez filed at DE-108-1.

Decl.[4] at ¶6.) Lydia Marquez, the off-duty coordinator at the relevant time, was responsible for assigning the off-duty officers to work each permit. (Marquez Decl. at ¶11.)

All payments for off-duty officers are made directly to MDPD. (DE-108-3.) The Off-Duty Services Information and Price Sheet given to private employers who wish to use off-duty officers states:

> PLEASE BE ADVISED [MDPD IS] UNDER NO OBLIGATION TO SUPPLY OFFICERS FOR YOUR EVENT. ALL OFF-DUTY JOBS ARE WORKED BY OFFICERS ON A VOLUNTARY BASIS ONLY. IT IS YOUR RESPONSIBILITY TO CONTACT THE OFF-DUTY COORDINATOR TO CONFIRM IF AN OFFICER WILL BE RESPONDING.

(DE-108-3 (all capitals in original).)

*Blue Martini's Participation in the Off-Duty Program*

In 2010, Herberto Sanchez, the operating partner of Blue Martini Kendall, LLC, which owns and operates the Blue Martini bar/restaurant/night club contacted Officer Lydia Marquez, MDPD's off-duty coordinator in the Kendall district, to obtain off-duty police services at the Blue Martini Kendall location at 8405 Mills Drive, Miami, Florida. (Marquez Decl., ¶5; Sanchez Dep. 17:4-14.) During the permitting process, two officers, Marquez and Duarte visited the Blue Martini location and met with Sanchez. (Marquez Decl. at ¶7.) During that visit, Marquez and Duarte made clear to Sanchez that any off-duty officers could only work in the mall/breeze way area outside of the Blue Martini. (Marquez Decl. at ¶8.)

The permit application states that the specific location of police services will be the "breeze way area." (Marquez Decl., Ex. A.) It further states that the services to be provided are "police services." (*Id.*) The permit does not request any particular equipment but does

---

[4]Marquez Decl. refers to the Declaration of Lydia Marquez filed at DE-109-4.

specifically request a supervisor, or sergeant, and one officer. (*Id.*) The permit application also states:

> It is further understood by all parties that a police officer performing off-regular-duty service who takes police action falling within the purview, or on the permit holder's premises, shall remain in an off-regular-duty service status for the duration of time it takes to complete the processing of such action. . . . However, an officer taking police action outside the purview of the permit, or off the permit holder's premises, will revert to an on-duty status.

(*Id.*) The permit was filled out on behalf of Blue Martini Kendall, LLC. (*Id.*) Blue Martini Kendall, LLC's permit application was approved by MDPD on June 20, 2010. (*Id.*)

*The Incident Involving Plaintiffs*

On the night of October 2-3, 2010, Miami-Dade Police officers Orlando Fleites and Jose Huerta were working for Blue Martini as off-duty police officers pursuant to the permit. (Marquez Decl. at ¶13.) That night, Plaintiffs, Gustavo and Elsa Martinez, who are brother and sister, arrived for drinks at the Blue Martini sometime before midnight. Later that night, Plaintiffs were in the breeze way area having a discussion about who would drive home. During the discussion, Gustavo made physical contact with Elsa. At some point during the discussion between the Martinezes, Officers Huerta and Fleites detained Gustavo by physically taking him to the ground, punching him and then arresting him. (G. Martinez Dep.[5] 59:1-9; security camera video DE-110.) After Gustavo was restrained, Officer Huerta grabbed Elsa by the throat, pushed her onto a bench, and placed her under arrest. (E. Martinez Dep.[6] 58:23-59:4; DE-110.) According to Sanchez, Blue Martini's operating partner, no Blue Martini employees participated

---

[5]G. Martinez Dep. refers to the deposition of Gustavo Martinez filed at DE-108-5.

[6]E. Martinez Dep. refers to the deposition of Elsa Martinez filed at DE-108-6.

directly in the detention or arrest of the Martinezes. (Sanchez Dep. 27:1-13.) The entire incident occurred in the breeze way area outside of the Blue Martini and was captured by a video surveillance camera. (DE-110.)

On the night of the incident, no Blue Martini employees gave any instructions to the officers. (Lewis Dep. 79:2-13.) While the officers were working off-duty, they were not under the control of Blue Martini. (Lewis Dep. 79:14-18.) Plaintiffs both testified that they saw officers inside Blue Martini on the night of the incident. (G. Martinez Dep. 78:6-20; E. Martinez Dep. 69:11-16.) Further, both testified that Blue Martini employees actively engaged in their detention. (G. Martinez Dep. 65:2-67:10; E. Martinez Dep. 55:3-11; 56:12-17.) However, the video of the incident shows only people in police uniforms actively involved in Plaintiffs' detentions and arrests and one person in a white shirt who appears to help restrain Gustavo Martinez after he was taken to the ground by officers. (security camera video DE-110.) However, Plaintiffs have presented no evidence indicating that the man in the white shirt worked for Blue Martini. When asked about the man in the white shirt, Gustavo Martinez stated that he did not have any information that the man was anything other than a customer of Blue Martini. (G. Martinez Dep. 65:2-7.)

*The County's Cross-Claims Against Blue Martini*

After Plaintiffs filed their complaint, Miami-Dade filed a cross-claim against Blue Martini seeking indemnification and contribution. Prior to filing the cross-claim, the County demanded that Blue Martini Kendall, LLC indemnify the County in accordance with the provisions of Florida Statute, section 30.2905. (DE-109-1, Ex. B.) On October 11, 2012, Blue

Martini Kendall, LLC denied the County's request for indemnification via Blue Martini's claims adjuster. (DE-109-1, Ex. C.)

After nine months of litigation, the County, on behalf of itself and its employees, settled the lawsuit with Plaintiffs for $25,000.00. (DE-109-1, Ex. D.) The Claims Adjuster for Miami-Dade County Risk Management asserts that this is a fair and reasonable settlement under the circumstances. (DE-109-5.) The County made a second demand for Blue Martini Kendall, LLC to defend and indemnity the County on May 9, 2013. (DE-118-3.) In the demand, the County indicated that it believed that the case could be settled for between 30 and 40 thousand dollars. (*Id.*) Blue Martini Kendall, LLC's claims adjuster again denied the demand. (DE-118-4.) In addition, during the course of litigation, the County has incurred $10,575.00 in attorney's fees. (DE-109-6.) Thus, Miami-Dade seeks a total of $35,575.00 from Blue Martini Kendall, LLC in indemnity.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

### A. The Blue Martini Defendants' Motion for Summary Judgment Against Plaintiffs is Granted

Each Plaintiff asserts two claims against the Blue Martini Defendants. Elsa Martinez alleges claims for (1) vicarious liability for the intentional battery on her and (2) negligence for Blue Martini's failure to supervise the officers and protect its patrons. Gustavo Martinez also asserts the same two claims for (1) vicarious liability for the intentional battery of him and (2) negligence for failure to supervise the officers and protect its patrons. Blue Martini seeks summary judgment on all four claims.

#### *i. Blue Martini is Entitled to Summary Judgment on Plaintiffs' Vicarious Liability Claims*

Blue Martini seeks summary judgment on the vicarious liability claims because it cannot be vicariously liable for the actions of the non-employee officers. Plaintiffs counter that material

issues of fact exist regarding the extent of Blue Martini's control over the officers. Because Plaintiffs have not established that the officers were employees of Blue Martini, they cannot establish a necessary element to hold Blue Martini vicariously liable. There is no record evidence that the officers were employed by Blue Martini, were acting within the scope of their employment with Blue Martini, or arrested Plaintiffs to further a purpose or interest of Blue Martini. Consequently, summary judgment is granted to Blue Martini on Plaintiffs' vicarious liability claims.

Under Florida law, an employer cannot be held vicariously liable for the acts of an independent contractor; the employer can only be held vicariously liable for the acts of an employee/agent. *Del Pilar v. DHL Global Customer Solutions (USA), Inc.*, 993 So. 2d 142, 145 (Fla. 1st DCA 2008). Florida has adopted the test set out in the Restatement (Second) of Agency § 220 (1958) for determining whether one is an employee or independent contractor. *Kane Furniture Corp. v. Miranda*, 506 So. 2d 1061, 1063 (Fla. 2d DCA 1987) (citing *Cantor v. Cochran*, 184 So. 2d 173 (Fla. 1966)). The test sets out ten factors for consideration:

> (1) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (2) whether or not the one employed is engaged in a distinct occupation or business;
>
> (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (4) the skill required in the particular occupation;
>
> (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (6) the length of time for which the person is employed;

> (7) the method of payment, whether by the time or by the job;
>
> (8) whether or not the work is a part of the regular business of the employer;
>
> (9) whether or not the parties believe they are creating the relationship of master and servant; and
>
> (10) whether the principal is or is not in business.

*Kane*, 506 So. 2d at 1063. Applying these factors to the facts here leads to the conclusion that the officers were independent contractors and, thus, Blue Martini cannot be held vicariously liable for their actions.

*(1) The extent of control which, by the agreement, the master may exercise over the details of the work.*

This factor is usually considered the most important factor in determining whether a person is an independent contractor or an employee. *Kane*, 506 So. 2d at 1064. A court considers whether the person is subject to control as to his results only or if he is subject to control as to the means used to achieve the results. *Id.* Thus, a person who has "unbridled discretion" in the physical performance of the tasks is an independent contractor. *Id.* Here, the evidence indicates that Blue Martini did not control the officers' physical performance of their security duties. While Blue Martini indicated where the duties were to be performed, there is no evidence that Blue Martini had any control over how the officers performed those duties.

The evidence indicates that the officers received their instructions from the off-duty coordinator, not Blue Martini. Further, testimony indicates that all off-duty officers working under an off-regular-duty permit exercise the same discretion as they would while on-duty. While the off-duty officers were instructed by MDPD to remain outside the club, there is evidence that they were inside Blue Martini at times. However, the officers' mere presence

inside Blue Martini does not indicate that the officers were receiving any instructions from Blue Martini, or were otherwise under the control of Blue Martini. There is no record evidence of any kind indicating that Blue Martini was able to exercise any control over the officers when they were working pursuant to the off-duty permit. Thus, this factor favors an independent contractor relationship.

*(2) Whether or not the one employed is engaged in a distinct occupation or business.*

Blue Martini argues, and Plaintiffs do not dispute, that being a police officer is an occupation distinct from owning and running a bar/restaurant/night club. Thus, this factor points toward an independent contractor relationship.

*(3) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision.*

As set out above, Blue Martini did not have direct contact with Officers Fleites and Huerta prior to them appearing for work that night. There is no record evidence indicating that employers of off-duty officers usually direct or supervise the officers' work. Consequently, this factor weighs in favor of an independent contractor relationship between Blue Martini and the officers.

*(4) The skill required in the particular occupation.*

Being a police officer involves specialized training in areas such as firearms and narcotics detection. These skills are specialized to law enforcement and are completely unrelated to the skills necessary for operating a bar/restaurant/night club. Thus, this factor weighs in favor of an independent contractor relationship.

*(5) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work.*

The officers supplied their own equipment for the job, including tasers, firearms, and uniforms. The permit application that Blue Martini Kendall, LLC filled out has a separate section for the applicant to request specific equipment that the officer bring to the job. Because Blue Martini did not provide any of the officers' equipment or provide any office space to the officers, this factor weigh in favor of an independent contractor relationship.

*(6) The length of time for which the person is employed.*

This factor considers whether the person worked on a regular or "as needed" basis, whether the person worked exclusively for the employer, and whether each job was a standard length of time. *Kane*, 506 So. 2d at 1065. None of these considerations favor an employer/ employee relationship in this case. The officers worked for Blue Martini on a voluntary basis, the officers did not work exclusively for Blue Martini, as they remained Miami-Dade police officers, the permit requested officers on an as needed basis, and the permit covered a limited time-frame. Consequently, this factor favors an independent contractor relationship.

*(7) The method of payment, whether by the time or by the job.*

While the officers were paid by time, they were not paid directly by Blue Martini, they did not get any benefits or vacation time from Blue Martini, and were not employed for a specific length of time by Blue Martini. Consequently, this factor indicates an independent contractor relationship. *See Kane*, 506 So. 2d at 1065.

*(8) Whether or not the work is a part of the regular business of the employer.*

Blue Martini runs a bar/restaurant/night club. It does not perform police services. Thus, police work is not part of its regular business. Consequently, this factor weighs in favor of an independent contractor relationship.

*(9) Whether or not the parties believe they are creating the relationship of master and servant.*

For this factor, a court considers the parties' intent and course of dealing, including who pays taxes. *Kane*, 506 So. 2d at 1066. Blue Martini did not pay the officers directly and did not withhold any taxes for them. The Off-Duty Agreement indicates that the MDPD was under no obligation to supply officers and all off-duty jobs are worked on a voluntary basis. There is no evidence indicating that the parties believed that they were creating a master/servant, or employer/employee, relationship. Consequently, this factor weighs in favor of an independent contractor relationship.

*(10) Whether the principal is or is not in business.*

Florida courts have found that "the relevance of this factor is obscure." *Kane*, 506 So. 2d at 1066. Regardless, Blue Martini is in business and remains in business. Thus, little weight is afforded to this factor.

Based on consideration of all of these factors, the officers were not employees of Blue Martini. Further, Plaintiffs concede as much in their response to the motion for summary judgment. DE-112 at 5 ("Plaintiffs do not dispute that the Officers working the off-duty detail underlying this case were not employees of Blue Martini." ). Plaintiffs, however, argue that the officers may still be "agents" of Blue Martini. While Plaintiffs technically are correct that the

officers may still be agents because independent contractors may be agents, *see* Restatement (Second) Agency § 2(3), an employer is liable for the actions only of his employees, or servants, not for the actions of an independent contractor, *see Del Pilar*, 993 So. 2d at 145. Thus, Plaintiffs' concession, as well as the record evidence, mandates the entry of summary judgment in favor of Blue Martini on Plaintiffs' vicarious liability claims.

***ii. Blue Martini is Entitled to Summary Judgment on Plaintiffs' Negligence Claims***

Blue Martini also seeks summary judgment against Plaintiffs on Plaintiffs' negligence claims because it did not have supervisory authority over the officers. Plaintiffs' negligence claims allege that Blue Martini was negligent in supervising and controlling the officers and by failing to take reasonable and necessary actions to protect its patrons from physical attack by its security personnel. Blue Martini asserts that it had no duty to supervise or control the officers because it had no authority to supervise or control the officers. Plaintiffs argue that a material issue of fact exists as to whether Blue Martini had control over the officers when they were in the geographic area set out in the permit, the breeze way area.

Plaintiffs, however, do not point to any evidence supporting their argument that facts suggest that Blue Martini may have had control over the officers while they were in the geographic area set out in the permit. As set out above, Blue Martini had little, if any, control over how the officers performed their jobs. Plaintiffs have not pointed to a single specific fact indicating that Blue Martini had any supervisory authority over the officers, other than that Blue Martini chose the location in which the officers were to work. This is not enough control to establish a duty owed to patrons to supervise or control the officers. Further, Plaintiffs' claim

that Blue Martini employees, other than the officers, were directly involved in their detention and arrest, is disputed by the security camera video of the incident which shows only the officers and a man in a white shirt directly involved in Plaintiffs' detention and arrest. However, Plaintiffs have provided no evidence that the man in the white shirt worked for Blue Martini, something which could have been easily discoverable. Consequently, Blue Martini is entitled to summary judgment on Plaintiffs' negligence claims.

**B. Summary Judgment on Miami-Dade's Indemnity Claim is Granted Against Blue Martini Kendall, LLC**

Miami-Dade County and the Blue Martini Defendants have cross-moved for summary judgment on Miami-Dade's cross-claims for indemnity and contribution. Miami-Dade has conceded that its contribution cross-claim against the Blue Martini Defendants is now moot. Accordingly, that claim is dismissed. Miami-Dade also concedes that its claim for indemnity lies only against Blue Martini Kendall, LLC. Consequently, the claim for indemnity against Blue Martini Kendall, Inc. is dismissed and the only claim remaining for adjudication is Miami-Dade's claim for indemnity against Blue Martini Kendall, LLC.

***i. Blue Martini Kendall, LLC is Obligated By Statute to Indemnify Miami-Dade County***

Based on the language of Florida Statute, section 30.2905 and of the permit, Miami-Dade is entitled to summary judgment on its indemnity claim. Florida Statute, section 30.2905 states, in relevant part:

> (1) A sheriff may operate or administer a program to contract for the employment of sheriff's deputies, during off-duty hours, for public or private security services.

> (2)(a) Any such public or private employer of a deputy sheriff shall be responsible for the acts or omissions of the deputy sheriff while performing services for that employer while off duty, including workers' compensation benefits.

This Court has previously found that the plain meaning of the phrase "shall be responsible for the acts or omissions" includes an obligation of indemnification for acts or omissions taken by the officers while providing off-duty services to Blue Martini. *Martinez v. Miami-Dade County*, 975 F. Supp. 2d 1293, 1297 (S.D. Fla. 2013). Based on this and the undisputed fact that the officers' actions occurred within the breeze way area, Miami-Dade argues that it is entitled to summary judgment on its indemnity claim against Blue Martini Kendall, LLC.

Blue Martini Kendall, LLC counters that an opinion of the Florida Attorney General, 1990 Fla. Op. Atty. Gen 186 (1990), is directly on point and states that section 30.2905 is not a strict liability statute and that liability should be decided on a case-by-case basis, using the standard master/servant analysis for vicarious liability. Blue Martini Kendall, LLC's reliance on the Attorney General Opinion is misplaced because it was issued August 7, 1990, before the original enactment of the statute in 1991, and, thus, could not and did not address the statutory language. Therefore, the statute governs, not common law rules for indemnification, and Blue Martini Kendall, LLC must indemnify Miami-Dade if the officers were performing services for Blue Martini Kendall, LLC while off-duty.

Blue Martini Kendall, LLC argues that the Court must apply the standard master/servant analysis to determine whether the officers were performing services for Blue Martini Kendall, LLC such that Blue Martini Kendall, LLC would be liable. However, the language of the statute does not reference the traditional master/servant analysis. The statute, on its face, makes an employer liable for the acts or omissions of an off-duty officer who is "*performing services for*

that employer," not employed by the employer. (emphasis added.) This choice of statutory language indicates that the Florida Legislature did not intend to require proof of an employer/employee, also known as a master/servant, relationship between the officer and the private employer.

Here, there is no question of fact that Officers Huerta and Fleites were performing services for Blue Martini Kendall, LLC pursuant to a written agreement between Miami-Dade and Blue Martini Kendall, LLC. The permit specifically stated that the area of service was the "breeze way area" and that the services to be performed were "police services." Further, the terms of the permit state that "a police officer performing off-regular-duty service who takes police action falling within the purview, or on the permit holder's premises, shall remain in an off-regular-duty service status for the duration of time it takes to complete the processing of such action." There is no question that the incident occurred in the breeze way area and that the officers were performing police services when they approached Plaintiffs and the incident ensued. Thus, under the terms of Florida Statute, section 30.2905, Blue Martini Kendall, LLC, as the permit holder, is liable to Miami-Dade County for indemnity.

***ii. Blue Martini Kendall, LLC Must Indemnify Miami-Dade Even Though it Did Not Approve or Partake in the Settlement With Plaintiffs***

Finally, Blue Martini Kendall, LLC argues that Miami-Dade did not have the right to unilaterally settle Plaintiffs' claims and, thus, equity bars the County from recovering from Blue Martini Kendall, LLC. The cases relied on by Blue Martini, Kendall, LLC, however, are in apposite because they involved indemnification claims based on common law principles, not on a statutory right to indemnification, as is the case here. Miami-Dade, on the other hand, argues that

because Blue Martini Kendall, LLC's indemnification obligation arises from statute and Blue Martini Kendall, LLC twice rejected the County's request that it take over the defense of the County, this case is more akin to cases where an insurer refused to defend and indemnify its insured and the insured then settled the matter without the consent of the insurer. In those cases, courts have held that an insurer who improperly refused to defend the insured's claim could not later avoid its indemnification obligation by arguing that it did not agree to or partake in the settlement between the insured and the third party. *Steil v. Florida Physicians' Insurance Reciprocal*, 448 So. 2d 589, 591 (Fla. 2d DCA 1984); *Post Houses, Inc. v. Fireman's Fund Insurance Co.*, 469 So. 2d 863, 864 (Fla. 1st DCA 1985).

The Court agrees with Miami-Dade that this case is more like cases involving a contractual indemnity clause than a common law right to indemnity because Blue Martini Kendall, LLC's indemnification obligation, like that of an insurer, was clear from the start of the case and the parameters of the obligation were clearly set out. Further, Blue Martini Kendall, LLC had the opportunity to defend and indemnify the County and twice refused. Thus, Blue Martini Kendall, LLC must pay any settlement made in good faith plus reasonable attorneys' fees. *See Steil*, 448 So. 2d at 591; *Post Houses*, 469 So. 2d at 864. Miami-Dade has presented undisputed evidence of the amount of the settlement paid to Plaintiffs, $25,000.00, and its fees, which total $10,575.00. Blue Martini Kendall, LLC has not actually challenged the reasonableness of the settlement or the fees or shown that the settlement was not made in good faith. Having reviewed the amount of the settlement and the fees, and given that Blue Martini Kendall, LLC has not challenged their reasonableness, the Court finds that the settlement and fees are not unreasonable under the circumstances.

Accordingly, it is

ORDERED that:

1. Blue Martini Kendall, LLC and Blue Martini Kendall, Inc.'s Motion for Summary Judgment [DE-106] is GRANTED in part and DENIED in part:

    a. Blue Martini Kendall, LLC and Blue Martini Kendall, Inc.'s Motion for Summary Judgment is GRANTED as to Plaintiffs' claims. Plaintiffs claims against the Blue Martini Defendants are DISMISSED with prejudice.

    b. Blue Martini Kendall, LLC and Blue Martini Kendall, Inc.'s Motion for Summary Judgment is DENIED as to Miami-Dade County's cross-claims.

2. Miami-Dade County's Motion for Final Summary Judgment [DE-109] is GRANTED in part and DENIED in part:

    a. Miami-Dade County's Motion for Final Summary Judgment against Blue Martini Kendall, LLC for indemnification is GRANTED.

    b. Miami-Dade County's claims for contribution against Blue Martini Kendall, LLC and Blue Martini Kendall, Inc. are DISMISSED with prejudice and Miami-Dade's claim against Blue Martini Kendall, Inc. for indemnification is DISMISSED with prejudice.

3. All pending motions not otherwise ruled upon are DENIED as moot.

4. The Court will enter separate judgments.

5. This case is CLOSED.

DONE and ORDERED in Miami, Florida, this 21st day of July, 2014.

                                          PATRICIA A. SEITZ
                                          UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record